The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to hear argument in our first case, number 171421. Mr. Hughes? I'm sorry. Good morning. May it please the Court, my name is Jim Hughes. I'm an attorney from Durham, North Carolina, and along with Mr. Bruce Hoof, we represent the plaintiff in this action, Ms. Loretta Elliott. I'll be addressing the lower court's ruling on remand and then Mr. Hoof will be addressing the lower court's ruling on the motion to dismiss. Our motion for remand is based on two reasons. Number one, that it was untimely filed under section 1446B. And number two, that there is a lack of diversity of citizenship under section 1332 of the U.S. Code. The lack of diversity of citizenship under 1332 is a matter of first impression for this court. And the timeliness of the removal is something that this court made a decision on in Gordon in an unpublished opinion that was not to be used as a precedent, but otherwise has not had a published opinion on this issue. Tell me why this case is a direct action or is it not? It is a direct action, Your Honor. And why? Well, if you look at the rules by which the Supreme Court has set down in defining terms in a removal statute, one of the things they say is that in absence of a definition in the statute, a term should be given the meaning of ordinary or natural meaning. In this case, the word direct action was not defined in the statute. And so you look to what is its natural and direct meaning. In the FDIC v. Meyer case that I'm referring to, the court said, well, let's look at Black's Law to see if it's defined there. The word direct action is not an ambiguous term. It is a well-known legal term. And it is, in fact, defined in Black's. And it's defined as a lawsuit by an insured against his or her own insurance company rather than against a tortfeasor or a tortfeasor's insurer. That's the case we have in the case at Barr. And the second is a lawsuit by a person claiming against an insured, but suing the insurer directly instead. Do you have any courts that have agreed with your view of how this term is to be treated? It looked like almost all the cases, if not all of them, were to the contrary. You're correct, Your Honor. And I wish I could point you to a case. But unfortunately, the very first case that dealt with this issue made a mistake. They did not use the rules of construction that the Supreme Court has set out that they're supposed to use. And then one case after another started citing them. And all of a sudden, you get three or four cases and courts start saying, well, this is the majority rule. It's all based on a single mistake. That was not based on these rules of construction that the Supreme Court tells us to use. And my point to you is saying, yes, this is a matter of first impression in this court. So look at the rules of construction. Analyze it in terms of the rules of construction that are required of you by the Supreme Court. And certainly, you can look at the other cases, but they were all early. Most of them were early. And most of them did not use the ones that were before these cases that give rules of construction, were not decided by using those rules. In other words, they just simply ignored them. And my point here today is, yes, the case law is against me. But I believe that case law is wrong. And I believe that if you analyze this based on those rules of construction and give the plain meaning to the word direct action, which Black's Law Dictionary tells us is a lawsuit by an insured against his or her own insurance company rather than against the tortfeasor or the tortfeasor's insurance company. That's the plain and simple definition of direct action in Black's Law. That's the well-accepted definition in our legal community of what a direct action is. And the Congress did not come in and say, well, we want a direct action, but only those direct actions where the injured party is suing the tortfeasor's insurance company directly. They didn't say that. They just said when the insured, when it's a claim against an insurance company where the insured is not a party defendant and it's relating to a policy, then that is a direct action. That's what the statute says. And when you look at the definition of direct action, you will see that that certainly encompasses the facts that we have in the case at bar. I'm asking this Court to make an independent analysis of it based on those rules of construction. I believe that if you do, you will come to the same conclusion. So why is the removal motion untimely? The removal motion is untimely because the Section 1446 provides that it has to be removed within 30 days of service or receipt.  And the Supreme Court in Murphy Brothers v. Machete answered that question for us. In Murphy Brothers, the party had received a courtesy copy of the complaint. The defendant was then served with summons and the complaint. And the question was for Murphy, well, which one do you go by? Do you go by actual receipt or do you go by when the party was served with the summons and the complaint? And the Court in Murphy Brothers said you go by the date it was served, not the date it was received. Now, the defendants tried to distinguish that by saying, well, that dealt with a case where the complaint was sent before service. And it doesn't deal with an agent appointed to accept service. So, therefore, it's distinguishable. But that's a distinguishment without a difference because the question in Murphy is the same question that is before you today. And that is, when do you start counting the days? Is it the day they were actually served or the day they actually received it? Was there a statutory agent? There is no reference to statutory agents in the statute or exceptions for statutory  Was there a statutory agent in Murphy? Excuse me? Was there a statutory agent in Murphy? No, there wasn't. It was strictly on the issue of when do you start counting the days. So, why should you start counting the days starting with when the Commissioner of Insurance gets the copy of the complaint? Because that's the day that the defendant became legally obligated to appear and defend in the case. That's the day when the time for answering this complaint began to run on the defendant. Didn't know about it. Excuse me, sir? The defendant didn't know about it. Well, the defendant's agent for service or process did. And I would submit to you it's not a statutory agent. So, if you look at Black's Law Dictionary on the definition of a statutory agent, a statutory agent is one that becomes as a matter of Could the defendant have conducted business as an insurance company in that state without appointing the Commissioner of Insurance as an agent? No, Your Honor. No foreign corporation can conduct business in North Carolina without the appointment of an agent for service or process. Now, at general corporations, the requirement is you must appoint an agent that resides in North Carolina. And for insurance companies, they say you must appoint the Commissioner of Insurance. But the agent doesn't arise out of a matter of law. If the insurance company begins to do business in having not appointed the insurance commissioner, that agency doesn't occur out of just a matter of law. Now, they're in violation of the statutes for conducting business without appointing one, but the agent itself is not just coming out as a matter of law. Mr. Hughes, your time is expired. Go ahead. It seems to me that there's no accountability from the Commissioner of Insurance, whereas if it were a registered agent that the insurance company had named, there is a bit of accountability there. So from a policy standpoint, why should we? Well, the statute requires the Commissioner of Insurance to then forward it to the insurance company. So there is accountability there. You know, here's the problem with this. I'm sorry. Your time has really expired. You can use your colleague's time or you can go into your rebuttal time. I'll go to the rebuttal time. That will be fine. Okay. Thank you very much. Thank you, Your Honor. Good morning, Your Honors. I'm Bruce Hoof. I also represent Ms. Elliott. I will direct my remarks to our appeal from the lower courts allowing or dismissing our motion. In that setting, as Your Honors are aware, we have a situation where we apply federal procedural law, but the substantive law is that of North Carolina. And I would assert and suggest to this Court that applying the North Carolina substantive law, it is clear that the complaint that Ms. Elliott filed stated a claim on which relief could be granted and therefore it was error for the district court to dismiss the claim. I think it's important to understand that the complaint, first of all, asserts a single legal theory. We do not assert a theory for breach of the insurance contract. This is a point of confusion and the defendants have seemed to assert that unless the insurance  not the case. The North Carolina Authority and specifically the leading case, which is the Gray case, has established that there is a claim for violation of our unfair and deceptive trade practices statute and that that is separate and a distinct cause of action from a breach of contract claim. The Gray case, I suggest, is controlling in the case in that it speaks to precisely the situation we have here. In this case, Ms. Elliott is asserting that the defendant insurance company violated provisions of the unfair claims handling practices statute. Gray dealt with that and said a violation of that is a violation of the unfair claims excuse me, the unfairness of trade practices statute. Therefore, creating exactly the cause of action that Ms. Elliott asserted here. Well, didn't they, wasn't she required to arbitrate first? She was required to arbitrate by the policy, Your Honor. But again, what we're looking at is a distinction between an obligation an insurance company by contract under its insurance policy and an obligation which it owes under the statute. The statute requires simply that the insurance company not violate any provision of that. And that creates a separate cause of action. It's not based in any way upon the insurance contract. The point here is the insurance company can have obligations by statute that are set by our legislature for public policy reasons that are in addition to or greater than their policy. They may not have any liability under the policy. We don't allege that here. What we allege is that in the handling of this claim they breached the provisions of that claims handling practice and therefore under Gray we have a claim for unfair trade practices. I think using my, excuse me, Your Honor. Where in your complaint do you allege an injury caused by the insurer? Your Honor, that is alleged and since I was thinking of it, it's sort of hiding in plain sight. Uh-huh. Well, we like it not hiding in plain sight. Yes. Well, it flows from the manner in which our courts and particularly the Miller case, I believe it's. No, I'm asking I think a simpler question, not what it flows from, but where do you allege those damages in your complaint? We allege them because we allege the facts which establish those damages. The facts are that the basically they offered nothing to settle the case. We recovered almost all of the underinsured motorist provisions. Now, what the cases say, Your Honor, is that in calculating damages that you calculate that underlying award or the damages, you treble that. I know. I understand all of that, but in your briefs you talk about various things that you claim. You're entitled to recover nominal damages, the damages for lost time, but you don't allege any of that in your brief. Your Honor, no. Your complaint. No, Your Honor, we don't. That was put in point of saying what we have, of course, is no displeasing. Yeah, but you can't have, we know you can't have a threadbare complaint. The Supreme Court's told us that, right? That's true, Your Honor, and what I'm saying is we do allege those damages, and we allege those damages because. Tell us which paragraph or paragraphs you feel like answers Judge Mott's question. I'm sorry, Your Honor, I don't have the complaint specifically in front of me, but if I could recite the facts. Well, maybe when your colleague gets up on rebuttal, you will have ready for him the parts of the complaint, not the underlying facts, the complaint that alleges these damages. All right, Your Honor. Okay. What I would say is, and maybe I'm repeating myself and I apologize, is that by alleging in the complaint, which we do, that the insurance company offered nothing and we recovered that amount. Under our case law, we've established that those are the amount of damages. The case law then says those damages are trebled, and then you do that before you deduct the credit. So what I'm saying is those allegations of those facts establish that, basically, by virtue of that violation, we've suffered damages of about just under $140,000. Your Honor, the North Carolina case is... Have you ever done insurance litigation before? Excuse me, Your Honor? Have you ever had an insurance litigation case before? And under this statute... Under any statute. I mean, insurance companies are very clever about not paying, but in the fact in this case, they were forced to pay. And yet you... I mean, I'm just... I'll be interested in seeing what provisions of the complaint make this clear. The, Your Honor, the Miller case speaks directly to this and says that this is how you're supposed to interpret the statute because the statute's supposed to be remedial. It's supposed to compensate and to deter insurance companies. And this is the way to calculate damages, which is... Can you tell me what case follows Miller and finds that there has been this unfair and deceptive trade practices recovery or case holding that there is such a claim that has the facts closest to the ones that are alleged here?  Thank you, Your Honor. The strongest case. I will attempt to do that. Thank you, Your Honor. Okay, great. Thank you so much. Excuse me. Thank you. Mr. Silverman? Thank you, Your Honors. May it please the Court. My name is William Silverman here on behalf of Appellee American States Insurance Company. With me is my colleague, Mark Langdon. With the Court's permission, I'll address the motion to remand first and then move to the motion to dismiss. As to the direct action, the Court seems to have a good grasp of this issue based off of the questions. Nine of the 11 circuits have addressed this exact issue and all have held the exact same way that the district court did here. The purported plain language of the direct action. Well, it is plain, and it could be interpreted as plainly plain. It's direct action, both of those words we understand in the English language, right? And it could mean one thing according to the encyclopedia, and it could mean another thing, right? Yes. The courts have all chosen one way. Your Honor, the courts have all decided that the language was not plain, that you needed to look to congressional intent to implement the purpose, and that the purpose, if you do get beyond the actual language of direct action, that the congressional purpose is clear, that this was meant to deal with a particular issue from a Louisiana state statute and a Wisconsin state statute that allowed for an injured party to skip over the tortfeasor in terms of suing the tortfeasor's liability insurer. And the courts in Louisiana were being flooded with such claims, and this amendment was meant to solve that problem. Nowhere is there any discussion in there about actions against an insurance company for the insurance company's own conduct. Your Honor, the First Circuit in the White case talked about, in terms of the plain language, that if you were to accept Ms. Elliott's purported, requested interpretation here, you could essentially write direct out of the statute, that it would be in any action against an insurance company with which the insured is not added as a defendant, that the use of that term direct requires going beyond the plain language. And it also, the fact that this is followed by it says, to which case the insured is not named as a defendant, would seem kind of lost in the sense that the insured is the plaintiff here. How could the insured be the plaintiff and the defendant in either side? And also, I would point to the court that to the extent that the court would accept that any action against an insurance company would be a direct action within the meaning of the statute, that would lead to a much broader result than was intended by Congress, that would essentially strip diversity jurisdiction from any action filed by an insured against his or her insurance company. If there's no question, I'm going to move to the timing of removal, the court's permission. You're on the Gordon versus Hartford cases on all fours. It really, the statutory schemes, the timing of removal, is all very, very closely matched with the North Carolina decisions here, or with the North Carolina statutory provisions here, rather. And the reasoning is sound. We would advocate strongly that the court follow. I think it was Judges Wilkinson, Shedd, and Duncan in a per curiam opinion that decided that. There are no other circuit courts' opinions on it. This is not something that the Supreme Court has addressed directly. But as the Gordon Court noted, the vast majority of district courts to have addressed the issue have held exactly as the Gordon Court is. That is, when service is made on a statutory agent, that the time for removal begins running only upon actual receipt of the complaint by the party being served. The issue with the construction that plaintiffs are, that Ms. Elliott is asking for here, is it conflates service under the state statute with receipt by the defendant. But 1446 requires receipt, and it says by service or otherwise. But if you look at the rationale in Murphy Brothers, it is to allow 30 days, to provide adequate time, to give 30 days, to make sure 30 days is allocated. And Justice Ginsburg, when looking at the legislative history, looks at the, that was Congress' intent in adding that language, by receipt or otherwise. And, Your Honors, as was noted in direct by Judge Agee, who talked about the fact that they don't know about the complaint when it's served on the Department of Insurance. That's right, the statutory agent is not the defendant. Service upon the statutory agent is not service upon the defendant. There was no question in the Murphy Brothers case that there was receipt. There was actual receipt prior to the complaint ever being served. The North Carolina legislature also recognizes that receipt by the defendant, or receipt by the statutory agent, is not receipt by the defendant. And if you look at the statute that allows for such service, which I think is North Carolina General Statute 58-1645, if an insurance company is served through the Department of Insurance, there are 12 extra days added to the period to be able to answer. That is, the 30 days that are allowed under North Carolina Rule of Civil Procedure 4, you add 12 days to that. And coincidentally, that 12-day lag between service on the Department of Insurance and receipt by my client, American States, is exactly what happened here. There is a provision under North Carolina General Statute 58-1640, which allows plaintiffs, when they are suing an insurance company, to serve them under regular procedures for foreign corporations under Rule 4. There is no requirement that the service be through the Department of Insurance. Ms. Elliott's expectations here should have been that the answer would only be due 42 days after service, because that is what the statute she served the company under. If she had wanted that time, that deadline, to be earlier, certainly that could have been accomplished by serving the appointed agent in Indiana, where American States is located. Your Honors, if removal begins with receipt by a statutory agent, the privilege to remove could easily be curtailed or abrogated completely. This is a broad rule that is being advocated here, and we contend that not only this Court's holding in Gordon, but well-reasoned decisions from district courts within this, within the Fourth Circuit and across the country, support finding that the removal here was timely. And American States prays that this Court affirm the district court's denial of the motion to remand. With the Court's permission, I'm going to move on to the motion to dismiss. The district court found, and we contend correctly so on appeal, that Ms. Elliott failed to allege two of the elements required for her unfair and deceptive trade practices claim in North Carolina. She failed to plausibly allege facts to support the unfair deceptive conduct, that is, the alleged violations of the Unfair Claims Settlement Practices Act, and also failed to allege damages proximately caused by such conduct in any event. I'll address the violations of the Unfair Claims Settlement Practices Act first. It's important to note the nature of the coverage at issue here. It's UIM coverage, underinsured motorist coverage, which has been the subject, of course, of much litigation within North Carolina's state courts, and is particular in the sense that, although it is first-party coverage, it is a coverage that is provided by an insured's insurance policy with its own insurer, it is derivative and conditional, is how it's been described by the North Carolina Supreme Court, meaning that it is derivative of the insured's right to recover against a third-party tortfeasor and conditioned on that finding of liability, which includes both fault and damages. And only once that liability is established is the coverage triggered. There are three violations alleged, and we would argue alleged without factual support. There's an allegation that American states failed to attempt in good faith to effectuate prompt, fair, equitable settlements, which liability had become reasonably clear. Judge Motz, as you noted in my opposition's direct, they in fact did pay here. Once liability was established, there was payment. There's no dispute that American states paid the arbitration award once it was entered. They paid the interest. They paid the costs awarded. There's no dispute here that that was paid. Once liability was established, it was in fact paid. The second was... I understand that your representation is there's no dispute between the parties that whatever was owed under the insurance policy has been paid. Yes, Your Honor. They keep saying they're not making a claim under the policy. You said you're going to first address the Unfair and Deceptive Trade Practices Act, but that's the only claim they make, correct? Yes, Your Honor. Maybe I was missing a... I'm sorry. I meant to say violation, the unfair deceptive conduct, which is to establish their unfair deceptive trade practices claim, they have to show unfair deceptive conduct, inter-effecting commerce, approximately causing damages. I misspoke, Your Honor. I apologize for the confusion. But I was talking about the unfair deceptive conduct. The first element is missing here. And they're correct in the gray cases is law from the North Carolina Supreme Court saying that Unfair Claim Settlement Practices Act, if you violate that, it is a per se unfair deceptive act to establish that first element of your unfair trade practices claim. However, we're not disputing that law. I think that seems to be a point of disagreement. I think what I'm really after is the allegation of actual injury arising from what the insurance company did here. Because I gather you in your rights to go to the arbitration, right? Yes. And does your client do that always? There is no allegation within the case. I didn't ask if there was an allegation, did I? Your Honor, I can't speak to that. I just don't know whether my client does that. That's fine. I just can't. It's fine. I'm sorry. But no, I mean, this is, the allegations are three. They say that they failed to effectuate a settlement where liability had been reasonably clear. We contend that's not the case. Once liability had been established, they paid. She claims that she was compelled to institute litigation to recover amounts due under an insurance policy. Well, the amounts weren't due under the insurance policy until the arbitrator found that there was liability, both fault and the magnitude of damages which were established. And finally, with regard to attempting to settle a claim for less than the amount which a reasonable man would have believed he was entitled, first, we point to the fact that there wasn't any duty to pay until liability was established. And second, as to the reasonable man standard, plaintiff seems to be substituting her judgment into that in terms of saying that what she said was reasonable. In fact, her demand at the beginning of the case as alleged in the complaint is $234,000 was her estimate of the damages. At the end of the day, the arbitrator awarded $90,000. American states, even if it had valued the claim at zero, would have been closer to the 90 than she was at $234,000. I think this is corollary to the main point is that there's no obligation to make a payment here until there is liability established. Plaintiff attempts to create a rule to say that an insurance company has to pay when the demand is made. Under her construction of these statutes here in the underinsured motorist context is to say that an insurance company can never contest damages. They can't say we disagree with your valuation of your claim and therefore are going to go to arbitration to determine what the value of the claim is without risking bad faith. If they don't just accept the demand and pay it, then you better be right because you're going to be subject to bad faith. Or even if you are right, as they were here, when they refused to pay her the limits and she ultimately recovered $10,000 less than the limits, that they could still be somehow liable for bad faith. It's an untenable rule for underinsured motorist carriers in North Carolina. If she has a problem with the way the underinsured motorist statute is written and the rate bureau promulgates policies that include the standard language in it, that's a problem better left up to the legislature. And as to the damages, Your Honor, as to the last one, I too am looking for the damages approximately caused as they are alleged in the complaint. The district court noticed that there's a threadbare recital that they've been damaged in an amount of $25,000 without any factual support for it. There was no motion to amend or before Your Honors on a closed record on the 12B6 motion. And we contend that that statement alone does not satisfy the pleading standards in federal court and is an additional basis warranting dismissal under the 12B6 standard for failure to satisfy elements of the first elements and the third elements of the unfair trade practices claim. Briefly, I will address, even if the court accepts those additional elaborations that were added in Ms. Elliott's appellate briefing, and frankly, in briefing to the district court as well, Your Honors, we contend that even those damages which are identified as theoretical damages, albeit not pled in the complaint, don't satisfy the approximate causation standard. First, with regard to the actual contract balance, as we've noted and as Your Honor noted on direct, this has already been paid. That damage, first, the damage that was awarded in arbitration was approximately caused by the negligence of the underinsured motorist. That was damage for pain and suffering and medical expenses. That was not damage caused by the insurance company. At most, even if you accept Ms. Elliott's allegations that they delayed paying and should have paid up front, which we clearly do not, the most that she would be entitled for is damages for the delay in being paid. The damages themselves were not approximately caused by any conduct by my company. And Your Honors, I would also point to the fact that the arbitration award pays Ms. Elliott for, or compensates Ms. Elliott for that delay in the form of prejudgment interest. Your Honor, she's been satisfied for prejudgment interest through the arbitration award. She's been satisfied for costs of the litigation as awarded by the arbitration panel. Your Honors, we believe that the district court got it right here. Judge Tilley issued a well-reasoned opinion in conformity on the removal issues with courts across the country. And we urge that this court adopt the same rule that has been adopted by nine of this court's sister circuits in holding that a direct action is not satisfied by a bad faith claim. Your Honors, unless you have any more questions, I'm done. No, I think we're all set. Thank you so much. Thank you all. Thank you. I'm going to attempt to answer your questions that you made to Mr. Hoof, although that's not been my area of preparation. But the allegations, allegations 17 and 18, are those allegations in which the amount of the award were alleged. In the case of Washburn v. Vandiver, which is cited in the briefs, the court says that the damages are trebled. Those are the damages, that amount that was obtained. Those are the damages. They're trebled and then the credit is given. I want to correct one thing that Mr. Silverman said, however. This is not necessarily a bad faith claim. This is a violation of the statute that North Carolina has put on how insurance companies are to comport themselves. This is not a situation where they made an offer and it was low and the parties couldn't agree, so you went to court. This was a situation where we made a demand on the first carrier. They didn't even question it. They paid the limits. And then we sent the same demand to American states and said, listen, we'll accept the $70,000. Let me interrupt. I just want to make sure I'm following what you told us in the beginning. You're saying that the damages under the Unfair and Deceptive Trade Practices Act are the amount that you were paid under the insurance policy because that appears to be what's pled in 17 and 18. Yes, the amount that we recovered in the arbitration, which is the $90,000 plus all the other costs minus the $30,000 that we got from the state farm policy. And that's damages because? Because the defendant forced us to file suit and get a judgment. And that is one of the specific items listed in the Unfair Insurance Practices Act that the court in gray has said is an unfair and deceptive trade practice. They didn't offer a penalty, a penny. In fact, they said, we think the other carrier paid too much. So they forced us to file a complaint to even get an offer. And we had to go all the way through arbitration. And we finally got the award. And the award was very close to the $70,000 that we had demanded. And so the damages are that amount, treble. This is your client's insurer, right? Excuse me. This is your client's insurer. Not direct insurer, but insurer if the direct insurer doesn't pay, right? Is that right? Yes, I think so. Yes, Your Honor. I understand your question. Okay, so you have some sort of contract. You have an insurance policy with this insurer, right? Correct. Okay, and under that insurance policy, the insurer can go to arbitration, right? Correct. Okay, and he, so he, what that insurance company did was avail itself of its rights under the policy, right? They acted according to their rights under the policy, yes. But they did not act. I'm sorry. I'm sorry, I didn't mean to interrupt. No, that's all right. Go ahead. They did not act under the dictates of the North Carolina statute for unfair insurance practices. And that's over and above their duties under the policy. We did not sue for breach of the policy. Okay, remember there, I had a two-part question. And we'll get back to this first part in a minute. All right. But the other part of the question was the case that you have that is closest to this one in which a North Carolina court has said that there is a violation of this unfair and deceptive trade practices act. That would be the Gray case. Okay, and if we conclude that the Gray case is not close to this one, where are we? If it's a wholly different situation? I'll be frank with you, I don't know because I think the Gray case is. On all fours, you think it is? There's no case that's totally on all fours, Your Honor. But it's as close as you can get, I believe. Okay, so let's go back just a moment to the amount of damages. Because I was struck by that it didn't seem that you alleged actual injury caused by the insurer. Because you went to arbitration. You, in fact, got the award. You got prejudgment interest. Is that correct? Yes. And post-judgment interest as well? Yes. And so, I'm still not, and the complaint doesn't tell me where that amount is. Well, the complaint. I understand that you had to go to arbitration. But I also understand you got the money that's talked about in 17 and 18. That's correct, Your Honor. So you can't be suing for recovery of that money, can you? No, we can't recover that money. Then where do you allege the actual injury caused by the insurer? It can't be those two things because you've gotten them. Because at the time the cause of action occurred, which is the failure to make any offer on a claim that was clearly, should have been made as evidenced by the arbitration award, forcing us to go to court, that is when the cause of action occurred. And that point, the damages were not yet set, the amount of the award. Now, they did subsequently pay that. But under an unfair and deceptive trade practice, you take those damages, you treble them, and then you give credit for what they have paid. And that's the reason for the unfair and deceptive trade practice and the penalty portion of it and the public policy portion of it. That's the reason this case isn't on a contractual basis relating to the policy. It's on the public policy basis of the Unfair Insurance Practices Act that the State has dictated needs to be upheld. Okay. I've asked you some questions, so I'll give you another minute here on rebuttal. Okay. I just want to quickly talk about the timeliness of the removal in that, in this case, in Barber v. International Union, decided by this Court, the Fourth Circuit Court of Appeals, the Fourth Circuit said that in determining removal cases, there are questions that you have to review it from, standards of construction. And it says that removal statutes must be strictly construed that any doubt resolved in favor of remand and continued jurisdiction precise limits of removal status has to be the exact restrictions of the removal statute defined. None of the cases cited by the defendant in their brief analyzes this decision based on those factors. None of them. The Court below didn't analyze the decision based on those factors. And I'm impressed that Mr. Silverman didn't mention those factors at all in his argument today. But this Court in Barber, especially on a de novo review as this is, says that you have to put those factors into place. You have to analyze this case based on those factors. This whole statute was changed because of inconsistencies and different results from different times. Thank you very much. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, G. Steven Agee, Henry F. Floyd